IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RON CRAIG ILG, | ) | |
| | ) | No. 41276-8-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF HEALTH, | ) | UNPUBLISHED OPINION |
| WASHINGTON MEDICAL | ) | |
| COMMISSION, | ) | |
| | ) | |
| Respondent. | ) | |

HILL, J. — Ronald Ilg was a licensed physician who used the dark web to solicit violent crimes against his former colleague and estranged wife. He paid thousands of dollars in Bitcoin and provided detailed instructions to a hitman to inflict serious physical harm, including breaking his colleague's hands, kidnapping his estranged wife, and injecting her with heroin. Ilg later pleaded guilty in federal court to two felony counts of threats in interstate commerce. The Washington Medical Commission (Commission) initiated disciplinary proceedings and revoked Ilg's medical license for unprofessional conduct under RCW 18.130.180(1) and (17).

Ilg appeals the Commission's decision. He argues the Commission erred in revoking his license because his conduct was not related to the practice of his profession. Because substantial evidence supports the Commission's findings and its interpretation of RCW 18.130.180, we affirm.

FACTS

In September 2003, Ilg received his license to practice as a physician and surgeon in Washington.  In August 2022, Ilg pleaded guilty in federal court to two counts of threats in interstate commerce.  He was sentenced to 96 months of confinement.  The guilty plea detailed the facts that follow.

In January and February 2021, Ilg used the dark web to solicit a hitman to injure his former colleague, who previously worked in Ilg's medical practice.  Using the moniker "Scar215," Ilg instructed the hitman that his former colleague should "be given a significant beating that is obvious" and that the beating should "injure both hands significantly or break the hands."  Administrative Record (AR) at 13.  Ilg paid approximately $2,000 in Bitcoin for the hitman to carry out the attack.  Ilg requested confirmation of the assault and indicated that he had a "more complicated job" for the hitman if the assault on his colleague was successful.  AR at 13.

In late March 2021, Ilg accessed the dark web again to arrange an attack against his estranged wife during their divorce proceedings.  Ilg paid approximately $60,000 in Bitcoin for a hitman "to kidnap [his estranged wife], extort her, inject her with heroin, and hold her hostage for seven days."  AR at 13.  Ilg also established a structured bonus scheme if additional demands were met within two weeks of her release.  Bonuses would be paid if his estranged wife (1) withdrew all court motions and mediated agreements, (2) moved back in with Ilg and had intercourse with him "at least three times within the 2

week time frame," (3) refused to tell anyone about the kidnapping, and (4) became addicted to heroin under the hitman's guidance, with the hitman supplying Ilg with photographs and videos of her using the substance. AR at 13-14. Ilg also offered a bonus for planting drugs and needles with his estranged wife's DNA throughout her home. Ilg instructed the hitman to use "all means necessary" to accomplish these goals against his wife, including "threatening to severely beat [her] father, slaughtering [her] dog, and threatening to cause [her] older son to become addicted to heroin." AR at 14.

Following Ilg's guilty plea in federal court, the Commission charged Ilg with committing unprofessional conduct in violation of RCW 18.130.180(1) and (17). Ilg filed a motion to dismiss the charges, arguing that his actions were not related to the practice of his profession. The Commission subsequently moved for partial summary judgment.

In July, the presiding officer denied Ilg's motion to dismiss and granted the Commission's motion for partial summary judgment. The presiding officer concluded that Ilg's conduct, even though it was not directed toward a patient, demonstrated a reasonable concern that Ilg would abuse the status of his profession to harm the public, and lowered the standing of the medical profession from the public's perspective. The Commission permanently revoked Ilg's license to practice as a physician and surgeon in Washington, finding that Ilg had violated RCW 18.130.180(1) and (17).

Ilg appealed to the Thurston County Superior Court. Upon a stipulated motion by the parties, the superior court certified the agency's final decision for our direct review.

ANALYSIS

*Standard of Review*

Ilg argues that the Commission erred in concluding he engaged in unprofessional conduct related to his medical practice in violation of RCW 18.130.180(1) and (17). The Commission is an administrative agency and, as such, its order on review is governed by the Washington Administrative Procedure Act (APA), chapter 34.05 RCW. *Tapper v. Emp. Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). A reviewing court may reverse an administrative decision when: "(1) the administrative decision is based on an error of law; (2) the decision is not based on substantial evidence; or (3) the decision is arbitrary or capricious." *Id.*; *see* RCW 34.05.570(3).

Because the agency's decision was on summary judgment, "we overlay the APA 'error of law' standard of review with the summary judgment standard, and review an agency's interpretation or application of the law de novo while viewing the facts in the light most favorable to the nonmoving party." *Dep't of Revenue v. Bi-Mor, Inc.*, 171 Wn. App. 197, 202, 286 P.3d 417 (2012). APA standards are applied directly to the record that was before the agency, and substantial deference is given to the agency's interpretation of the law. *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 728, 818 P.2d 1062 (1991).

A.      *Unprofessional Conduct Legal Principles*

The Commission is authorized to revoke the license of a professional if the license holder commits unprofessional conduct.  RCW 18.130.160.  For the purposes of this appeal, an individual commits unprofessional conduct if they commit an act "involving moral turpitude, dishonesty, or corruption relating to the practice of the person's profession" or if they are convicted of a "gross misdemeanor or felony relating to the practice of [their] profession."  RCW 18.130.180(1) and (17).

B.      *Related to the Practice of Ilg's Profession*

When applying RCW 18.130.180(1), the primary inquiry is the relationship between the alleged unprofessional conduct and the practice of one's profession.  *Haley*, 117 Wn.2d at 731.  To serve as grounds for professional discipline, the statute requires the alleged conduct to be "related to" the practice of the profession.  *Id.*  The Washington Supreme Court has determined that conduct is "related to" a profession if it demonstrates unfitness to bear the profession's responsibilities or to enjoy its privileges.  *Id.* at 731-32.

In *Haley*, a surgeon, Dr. Haley, initiated a sexual relationship with his 16-year-old patient months after treating her through an emergency surgery.  *Id.* at 723.  The Washington State Medical Disciplinary Board concluded Dr. Haley committed unprofessional conduct under RCW 18.130.180(1) and revoked his license.  *Id.* at 726. The Washington Supreme Court affirmed on appeal, concluding the conduct demonstrated unfitness to practice medicine, particularly in light of the consequences the

5

conduct has on the profession's reputation in the minds of the public. *Id.* at 736.

Specifically, the court noted Dr. Haley abused his status as a physician to initiate the

sexual relationship. *Id.*

The court emphasized that conduct need not be directly related to the specific

professional skills required by the profession in order to establish unfitness. *Id.* at 733.

Nor must the conduct occur during the practice of the profession or reflect a doubt or

deficiency in their technical competence in order to relate to the profession. *Id.* Rather,

conduct is sufficiently related to the practice of medicine "if it raises reasonable concerns

that the individual may abuse the status of being a physician in such a way as to harm

members of the public, or if it lowers the standing of the medical profession in the

public's eyes." *Id.*

In reaching its decision, the *Haley* court partly relied on *In the Revocation of the*

*License to Practice Medicine and Surgery of Kindschi*, 52 Wn.2d 8, 319 P.2d 824 (1958).

There, the Washington medical disciplinary board temporarily suspended a surgeon's

license to practice medicine following his conviction of income tax fraud. *Id.* at 9-10.

The Washington Supreme Court upheld the decision, concluding tax fraud involved

moral turpitude and a rational connection existed between the misconduct and the

doctor's trustworthiness to practice medicine. *Id.* at 12. The court reasoned that the

public is entitled "to expect the highest degree of trustworthiness" from physicians and

that fraudulent conduct bears directly on that expectation. *Id.* In citing *Kindschi*, the

*Haley* court recognized the conduct need not directly relate to the practice of medicine or occur during the exercise of medical skills. *Haley*, 117 Wn.2d at 733.

Ilg attempts to support his position by citing *Ritter v. Board of Registration for Professional Engineers & Land Surveyors*, 161 Wn. App. 758, 255 P.3d 799 (2011). There, Ritter, a licensed professional engineer, was convicted of three counts of child molestation in the first degree involving a family member. *Id.* at 760-61. The engineer board initiated disciplinary proceedings against Ritter and suspended his license for a minimum of five years. *Id.* at 761-63. The board concluded that Ritter's actions were acts of moral turpitude and constituted unprofessional conduct under RCW 18.235.130(1). *Id*. at 762-63.

Ritter appealed, arguing that his actions did not constitute unprofessional conduct because they were not committed in the course of his engineering practice and were unrelated to his duties as an engineer. *Id.* at 764. This court agreed, holding that no reasonable concerns existed that Ritter would abuse his status as an engineer. *Id.* at 767. The court held that because the record did not show that Ritter regularly interacted with children or used his position to take advantage of children, his conduct was not related to the practice of professional engineering. *Id*.

Unlike *Ritter*, Ilg fails to identify any distinction between the victims of his crimes and the patients he would interact with as a licensed medical professional. We need only

determine Ilg's conduct raises reasonable concerns that he may abuse the privileges of his profession or undermine the public's trust in physicians. Such facts exist here.

First, Ilg's efforts to hire a hitman to harm his former colleague relate to his professional practice. Ilg's objective was not only to physically harm his colleague but to interfere with his colleague's ability to practice medicine by injuring or breaking his hands. Ilg's directive to, among other things, administer heroin to his estranged wife is conduct incompatible with the responsibilities entrusted to a physician and heightens concerns about potential misuse of medical knowledge.

Second, Ilg's behavior suggests a clear lack of judgment and self-control. His actions demonstrate a profound disregard for the health, safety, and autonomy of others and reflects behavior that falls significantly below public expectations, thereby significantly undermining the public's perception of the medical profession.

The Commission's conclusion rests on undisputed facts and a permissible, well-established interpretation of RCW 18.130.180.[1] Substantial evidence supports the finding that Ilg's conduct relates to the practice of medicine, and the Commission's

---

[1] We reject Ilg's argument that the Commission relied solely on his criminal conviction to establish unprofessional conduct. RCW 18.130.180(1) expressly permits discipline regardless of whether the conduct results in a conviction and provides that a conviction constitutes conclusive evidence of the underlying criminal acts. The Commission relied on Ilg's conduct as described in the plea agreement. We also reject Ilg's argument that the absence of prior discipline or evidence of substandard patient care defeats the presiding officer's determination. No authority supports this argument.

No. 41276-8-III
*Ilg v. Dep't of Health*

decision reflects neither legal error nor arbitrary or capricious action.  Therefore, the final

order concluding that Ilg's actions amounted to unprofessional conduct related to the

practice of his profession as a physician is affirmed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Hill, J.

WE CONCUR:


_____
Cooney, A.C.J.



_____
Murphy, J.